UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MICHAEL BEST,                                          :
                                                      :
                                    Plaintiff,        :
                                                      :
                        -v-                            :          11 Civ. 4475 (JMF)
                                                      :
THE CITY OF NEW YORK and BRONX DISTRICT               :          OPINION AND
ATTORNEY ROBERT T. JOHNSON,                           :          ORDER
                                                      :
                                    Defendants.       :
                                                      :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    Plaintiff Michael Best brings this action, *pro se*, against the City of New York (the

"City") and Bronx District Attorney Robert T. Johnson, pursuant to Title 42, United States Code,

Section 1983.  In his complaint filed on June 16, 2011, Best alleges that he was maliciously

prosecuted by a "District Attorney representing Robert T. Johnson" and that unnamed New York

City Department of Correction ("DOC") Officers failed to put him in protective custody during

his incarceration.[1]  (Docket No. 2).  Defendants now move, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, for dismissal of the complaint in its entirety.  (Docket No. 16).

For the reasons stated below, the Court grants Defendants' motion, but will give Plaintiff leave

to amend the complaint to attempt to address some of the defects identified in this Opinion and

Order.

---

[1]      In his complaint, Best also named the DOC itself as a defendant.  On July 28, 2011, the
Honorable Richard J. Holwell — the district judge previously assigned to the case — dismissed
all claims against the DOC because, under New York law, an agency of the City of New York
cannot be sued.  (Docket No. 7).

## BACKGROUND

On a motion to dismiss, a court may consider facts stated in the complaint, any documents attached to the complaint, and any documents incorporated by reference into the complaint. *See, e.g.*, *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Accordingly, the following facts are taken from the complaint and from documents attached to and referenced therein, and are assumed to be true for purposes of this motion. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

On August 15, 2009, an individual named Andrew Moody was shot in the Bronx, New York. (Beath Decl. Ex. B at Count 1). According to the complaint, Moody subsequently identified Best as the man who shot him and, on August 17, 2009, Best was arrested pursuant to a warrant. (Compl. § 2 ¶ 3). On August 28, 2009, Best was indicted by a grand jury in New York Supreme Court, Bronx County, on charges of attempted murder in the second degree, assault in the first degree, and other lesser charges. (Beath Decl. Ex. B).[2]

Plaintiff alleges that, on or about October 17, 2009, his defense attorney received a signed statement from Moody, in which Moody recanted his prior accusation that Best had shot him. (Compl. § 2 ¶ 4). Moody allegedly asserted that, at an unspecified time after the shooting, a "District Attorney representing Robert T. Johnson" met him in the hospital where he was being treated for his gunshot wound. (*Id.* § 2 ¶¶ 2, 6). The prosecutor allegedly agreed to remove the handcuffs from Moody's wrists if Moody agreed to testify to the grand jury that Best had shot him. (*Id.* § 2 ¶ 6). Although the allegations in the complaint are not entirely clear, it appears to

---

[2]     Although the Beath Declaration identifies Exhibit A as the Bronx County Grand Jury Indictment of Plaintiff Michael Best in *People of the State of New York v. Michael Best*, Indictment Number 3539-09, dated September 18, 2009, this exhibit was filed as Exhibit B. (Docket No. 18-2). Accordingly, citations in this Opinion to the Beath Exhibit B refer to the Grand Jury Indictment at Docket Number 18-2.

state that during the grand jury proceeding, Moody disclosed the deal he had made with the prosecutor and testified that Best did not in fact shoot him. (*Id.*).

On November 23, 2009, the "District Attorney" allegedly received a copy of Moody's statement in which he recanted his previous allegation that Best had shot him. (*Id.* § 2 ¶ 5). Nevertheless, the unnamed prosecutor continued to prosecute Best. (*Id.*). Plaintiff alleges that he was released from DOC custody on December 23, 2009, but asserts that the criminal prosecution against him was not dismissed until November 8, 2010. (*Id.*).

Plaintiff also alleges that, while he was in DOC custody, unnamed correction officers violated a judicial order mandating that Plaintiff be kept in protective custody. (Compl. § 2 ¶ 9). Because he was not kept in protective custody, Plaintiff alleges, he suffered "mental anguish" and became "scared for his life." (*Id.*). Plaintiff also claims that he was "injured while coming back from belview [sic] in September 2009" (*id.*), apparently by falling out of the correctional transportation van (*id.* § 3 ¶ 1), and "was taken to Lincoln Hospital and given pain killers and muscle relaxers" (*id.* § 2 ¶ 9).

Plaintiff commenced this action on June 16, 2011. (Docket No. 2). Plaintiff seeks a total of $150,000 as compensation for his allegedly unlawful imprisonment and for other "mental and physical injuries." (*Id.* § 2 ¶ 10).

## DISCUSSION

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is

3

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Plaintiff is proceeding *pro se*. Therefore, his submission should be held "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotations and citation omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (stating that a court is "obligated to construe a *pro se* complaint liberally"). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34 [4][a], at 12-72.7 (2005)). Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" *Id.* (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61); *see also, e.g.*, *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (dismissing action because *pro se* plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

"A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted). But "a

4

court may dismiss without leave to amend when amendment would be futile." *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 342 (E.D.N.Y. 2010) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a *pro se* litigant, "should be denied").

## A.  Claims Against the City of New York

It is well established that a municipality may not be held liable under Title 42, United States Code, Section 1983 simply on the basis of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Thus, in order to hold a municipality liable under Section 1983, a plaintiff must allege facts demonstrating (1) the existence of an officially adopted policy, custom, or practice and (2) a direct and deliberate causal connection between that "policy, custom, or practice" and the violation of plaintiff's federally protected rights. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997). "A single incident involving an employee below the policymaking level will generally not suffice to support an inference of a municipal custom or policy . . . ." *Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 678 (E.D.N.Y. 2005).

Here, Plaintiff fails to allege, even in conclusory terms, that his imprisonment and prosecution were due to any policy or practice of the City of New York. Nor does Plaintiff allege that the DOC employees' alleged violation of a protective custody order was due to a policy or practice of the City of New York. Accordingly, because Plaintiff has neither identified a specific municipal policy or custom, nor established that he was subjected to a constitutional

deprivation as a result thereof, his claims against the City of New York must be and are dismissed.

**B. Claims Against Defendant Johnson**

Next, Plaintiff alleges that he was deprived of his constitutional rights as a result of his malicious prosecution and imprisonment by "the District Attorney representing Robert T. Johnson," who Plaintiff thereafter refers to as the "District Attorney." (Compl. § 2 ¶ 2).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, in order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See, e.g.*, *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Here, Plaintiff's complaint fails to allege facts demonstrating that Defendant Johnson himself had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of Plaintiff's civil rights. The complaint does not assert if or how Defendant Johnson was involved in the alleged malicious prosecution or why he has been named as a defendant. Indeed, Defendant Johnson is referenced only twice in the complaint: first, in the caption of the complaint, and second, when Plaintiff describes "the District Attorney representing Robert T. Johnson."

Moreover, Johnson cannot be held liable in his supervisory capacity as "[t]here is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Before the

Supreme Court's decision in *Iqbal*, the law in this Circuit was that a plaintiff could state a claim against a supervisory defendant in a Section 1983 case when the plaintiff alleged that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  In the wake of *Iqbal*, there is some disagreement among courts about whether these five factors continue to apply.  *Compare Martinez v. Perilli*, No. 09 Civ. 6470 (WHP), 2012 WL 75249, at *4 (S.D.N.Y. Jan. 5, 2012) (holding that the "five *Colon* categories still apply after *Iqbal*"), *with Bellamy v. Mount Vernon Hosp.*, 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster"); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) (expressing skepticism as to whether all *Colon* categories survived *Iqbal*, but not deciding the issue).  All courts appear to agree, however, "that allegations that do not satisfy *any* of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor."  *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011) (emphasis added).

That is the case here.  Plaintiff does not assert that Defendant Johnson ever knew of, or participated in, Plaintiff's imprisonment or prosecution; that he was grossly negligent in supervising subordinates who committed the wrongful acts; or that he exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring.  Moreover, Plaintiff nowhere alleges that Johnson created a policy or custom that brought about the alleged constitutional violations.  Accordingly, these claims must be dismissed.

## C. Claims Against the Unnamed Prosecutor

Plaintiff's complaint did not name the "District Attorney representing Robert T. Johnson" as a separate defendant, but read liberally his complaint could be construed to state claims against this prosecutor — presumably, an assistant district attorney — for the prosecutor's alleged involvement in inducing Moody to falsely inculpate Best, presenting his testimony to the grand jury, and in prosecuting Best even after Moody recanted his testimony.  The Court notes that these claims should have been filed against "John Doe," as a placeholder for the assistant district attorney of whose identity Plaintiff is apparently unaware.  *See, e.g.*, *Woodward v. Office of Dist. Atty.*, 689 F. Supp. 2d 655, 659 (S.D.N.Y. 2010); *Abreu v. City of N.Y.*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009).

Defendants argue that any assistant district attorney who prosecuted the underlying criminal matter would be absolutely immune from suit, so that Plaintiff's claims against the "District Attorney" should be dismissed without giving Plaintiff an opportunity to amend his complaint.  "It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution . . . is immune from a civil suit for damages under § 1983.'"  *Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 431 (1976)).  Not every action performed by a prosecutor, however, is "absolutely immune merely because [it was] performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  Instead, a prosecutor's entitlement to absolute immunity turns on "the capacity in which the prosecutor acts at the time of the alleged misconduct." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000).  Generally, whether a prosecutor "may be sheltered by absolute immunity from liability for [his conduct] turns on

whether or not [his conduct] occurred in the course of his role as an advocate." *Hill v. City of N.Y.*, 45 F.3d 653, 662 (2d Cir. 1995).

Thus, absolute prosecutorial immunity applies to such acts as "initiating a prosecution and presenting the case at trial" or at other court proceedings. *Id.* at 661. It also applies to "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273; *see also, e.g., Watson v. Grady*, No. 09 Civ. 3055 (KMK), 2010 WL 3835047, at *16 (S.D.N.Y. Sept. 30, 2010) (holding that defendant prosecutors were entitled to "absolute immunity for their professional evaluation of the evidence and subsequent decision to indict Plaintiff"). By contrast, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley*, 509 U.S. at 273 (internal quotation marks omitted). As such, "when a prosecutor . . . performs the investigative functions normally performed by a detective or police officer, he is eligible only for qualified immunity." *Watson*, 2010 WL 3835047, at *15 (citations omitted); *see also, e.g., Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) ("The investigative acts that are entitled to only qualified immunity are those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators.").

Although the line between a prosecutor's acts as an advocate and as an investigator "might sometimes be difficult to draw," *Zahrey*, 221 F.3d at 347, "[t]he key . . . is the degree to which the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,'" *DiBlasio v. Novello*, 344 F.3d 292, 300 (2d Cir. 2003) (quoting *Imbler*, 424

U.S. at 430).  *See also Giraldo*, 694 F.3d at 166-67 (distinguishing investigative acts that are

entitled to only qualified immunity and "investigative acts reasonably related to decisions

whether or not to begin or to carry on a particular criminal prosecution," which "are shielded by

absolute immunity when done by prosecutors").  In determining how closely connected a

prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is

relevant, but not necessarily dispositive.  *See DiBlasio*, 344 F.3d at 300-01.  On the one hand,

"absolute immunity is unavailable for investigative conduct that takes place before probable

cause is established."  *Deskovic v. City of Peekskill*, Nos. 07 Civ. 8150 (KMK), 07 Civ. 9488

(KMK), 2009 WL 2475001, at *10 (S.D.N.Y. Aug. 13, 2009) (citing *Buckley*, 509 U.S. at 274).

On the other hand, "a determination of probable cause does not guarantee a prosecutor absolute

immunity from liability for all actions taken afterwards."  *Buckley*, 509 U.S. at 274 n.5.

      Here, a number of Plaintiff's allegations against the unnamed "District Attorney" are

barred by absolute immunity and must be dismissed with prejudice.  For example, Plaintiff

alleges that he was unlawfully imprisoned from August 17, 2009, until December 23, 2009, and

"made to go back and forth to court for almost 11 months," even after the "District Attorney"

allegedly learned that Moody had recanted his previous accusations of Plaintiff.  (Compl. § 2

¶ 8).  Because these allegations involved the prosecution of a suspect who had been indicted by a

grand jury, the prosecutor is plainly entitled to absolute immunity with respect to these claims.

*See Lee v. Willins*, 617 F.2d 320, 322 (2d Cir. 1980) ("[A] prosecutor is immune from a suit to

recover for an injury arising solely from the prosecution itself, e.g., being compelled to stand

trial or to suffer imprisonment or pretrial detention.").  So too, the "District Attorney" is entitled

to absolute immunity for presenting Moody's allegedly perjurious testimony to the grand jury.

*See, e.g.*, *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2004) (holding that absolute

immunity shields prosecutors from claims based on alleged "misconduct in the presentation of evidence to the grand juries that returned the challenged indictments against plaintiffs"); *accord Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995).

By contrast, based on the allegations in Plaintiff's complaint, it is not clear whether the "District Attorney" would be entitled to absolute immunity for his alleged role in inducing Moody to falsely inculpate Plaintiff in the first instance.  If the alleged interview between the "District Attorney" and Moody occurred after the authorities had probable cause to arrest Best, and was conducted for the purpose of evaluating "whether or not to begin" a criminal prosecution of him or for the purpose of preparing Moody for his grand jury testimony, the "District Attorney" would plainly be entitled to absolute immunity for his conduct.  *Giraldo*, 694 F.3d at 166.  By contrast, if the interview took place in an effort to identify the perpetrator of the shooting, and before the authorities had probable cause to arrest Best, the "District Attorney" would be entitled only to qualified immunity.  *See id.*; *see also, e.g.*, *Hill*, 45 F.3d at 661 ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts.").  In short, given the lack of information in the complaint about the timing and purpose of the interview, the Court cannot conclude as a matter of law that the "District Attorney" would be entitled to absolute immunity for his alleged role in inducing Moody to falsely inculpate Plaintiff, thereby rendering any amendment to add claims against the "District Attorney" futile.  *See, e.g.*, *Varricchio v. Cnty. of Nassau*, 702 F. Supp. 2d 40, 65 (E.D.N.Y. 2010) ("[T]he Second Circuit has held that, 'when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity

from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss.'" (quoting *Hill*, 45 F.3d at 663)).[3]

### D.  Claims Against the Unnamed DOC Officers

Finally, although Plaintiff does not name any DOC personnel as defendants either, his complaint can be read to allege claims against unnamed DOC personnel for violating a court order requiring Plaintiff to be held in protective custody.  (Again, these DOC personnel should have been named as "John Doe" defendants.)  It is well established that, whether under the Due Process Clause or the Eighth Amendment, prison officials are required to take reasonable measures to guarantee the safety of inmates.  *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted).[4]  When evaluating a failure-to-protect claim, a court must determine whether the prisoner has demonstrated that (1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and that (2) prison officials exhibited deliberate indifference to the prisoner's plight.  *Id.* at 834; *see also Blaylock v. Borden*, 547 F. Supp. 2d

---

[3]     Plaintiff alleges that Moody testified during the grand jury proceeding that "he made a deal with the District [A]ttorney to say that [Michael Best] shot him." (Compl. § 2 ¶ 6).  If Plaintiff is alleging that Moody informed the grand jury testimony that the "District Attorney" had forced him to identify Plaintiff as the perpetrator of the shooting, and that Plaintiff was indicted nonetheless, this claim would fail to satisfy the plausibility standard of *Iqbal*.  But considering Plaintiff's *pro se* status, the Court will liberally construe the complaint as alleging that although Moody testified that he had a "deal" with the "District Attorney," he did not testify that he was falsely accusing Best under the terms of this deal.

[4]     Plaintiff argues that his failure-to-protect claim should be analyzed under the Eighth Amendment. (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss at 4).  The Eighth Amendment's prohibition on "cruel and unusual punishment," however, does not apply to a person being held prior to trial.  *See, e.g.*, *Cuoco*, 222 F.3d at 106.  Instead, a person detained in state custody prior to conviction, such as Plaintiff, "receives protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  In any event, "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo*, 581 F.3d at 72.

305, 310 (S.D.N.Y. 2008).  In addition, the alleged deprivation must be "sufficiently serious"

such that it has denied the plaintiff of the "minimal civilized measure of life's necessities."

*Dawes v. Walker*, 239 F.3d 489, 493-94 (2d Cir. 2001) (internal quotations and citations

omitted), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

   In the present case, Best's claims against the unnamed DOC officials fail for at least two

reasons.  First, Plaintiff has failed to identify a basis for holding any particular named defendant

accountable for the alleged constitutional deprivations. *See Wright*, 21 F.3d at 501.  Although he

allegedly informed certain DOC officials that he did not feel safe, his complaint fails to allege

that any individual official had knowledge of the existence of conditions posing a substantial risk

of serious harm and, notwithstanding that knowledge, acted in a manner that was deliberately

indifferent to that risk.  Such a failure is fatal to Plaintiff's deliberate indifference claim. *See*

*Farmer*, 511 U.S. at 837 (noting that to state a deliberate indifference claim, defendants "must

both be aware of facts from which the inference could be drawn that a substantial risk of harm

exists, and [they] must also draw the inference"); *Rivera v. Bloomberg*, Nos. 11 Civ. 629 (PGG),

11 Civ. 4325 (PGG), 2012 WL 3655830, at *6 (S.D.N.Y. Aug. 27, 2012) ("Even if the

Complaints could be read to suggest that [defendants] failed to act, [a] prisoner's allegation that a

supervisory official failed to respond to a grievance is insufficient to establish that the official . . .

exhibited deliberate indifference . . . ." (internal quotation marks omitted)).

   Second, Best has failed to plead facts capable of establishing that his injury was

"sufficiently serious."  Although he repeatedly alleges that he feared his life was in danger

because he was not held in protective custody, he has not alleged that he was attacked or injured

as a result of being denied protective custody status, or even that other inmates or correctional

officers made significant threats against him.[5]  Fear of assault, by itself, does not constitute a

"sufficiently serious" injury sufficient to state a claim for failure to protect.  *See, e.g., Hudson v.*

*Greiner*, No. 99 Civ. 12339 (LAP), 2000 WL 1838324, at *7 (S.D.N.Y. Dec. 13, 2000) (holding

that plaintiff's allegation that the prison administration knew that placing plaintiff in the general

prison population could lead to his being injured, without an allegation of physical injury, was

insufficient to state a failure-to-protect claim); *Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y.

1998) (holding that evidence that plaintiffs "lived in fear of assault from their cellmates is not an

objectively serious enough injury" to support an Eighth Amendment violation).[6]

## D.  Leave to Amend

For the foregoing reasons, all of Plaintiff's claims must be and are dismissed.[7]

Nevertheless, in light of Plaintiff's *pro se* status, the Court will allow Plaintiff one opportunity to

cure the deficiencies in any of his claims — other than those against the "District Attorney"

subject to absolute immunity, which are not capable of being cured.  *See, e.g., Heicklen v. U.S.*

*Dep't of Homeland Sec.*, No. 10 Civ. 2239 (RJH) (JLC), 2011 WL 3841543, at *17 (S.D.N.Y.

Aug. 30, 2011) ("Generally, a court should not dismiss a *pro se* complaint 'without granting

leave to amend at least once when a liberal reading of the complaint gives any indication that a

---

[5]       Best does allege that he fell getting out of the correctional transportation van and was taken to the Hospital.  (Compl. § 3 ¶ 1).  He does not, however, allege that he suffered any injury from this fall or that the fall was a result of Defendants' actions.

[6]       In light of the foregoing, the Court need not, and does not, reach Defendants' contention that Plaintiff cannot recover an award of money damages because he has failed to allege that he suffered a "physical injury," as required by Section 1997e(e) of the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(e).  It is true that "[c]ourts have consistently held that section 1997e(e) bars prisoner civil rights suits seeking damages for constitutional violations where the inmate-plaintiff suffers only emotional and mental injury."  *Cox v. Malone*, 199 F. Supp. 2d 135, 139 (S.D.N.Y. 2002).  Nevertheless, a prisoner or detainee need not allege that he sustained a physical injury to recover nominal, compensatory, or punitive damages.  *See, e.g., Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002).

valid claim might be stated.' An opportunity to amend is not required, however, where any amendment would be futile — where 'the problem with [the plaintiff's] causes of action is substantive' such that '[b]etter pleading will not cure it.'" (quoting *Cuoco*, 222 F.3d at 112)). Accordingly, the Court grants Plaintiff leave to file an amended complaint correcting the deficiencies described above and in Defendants' motion papers within thirty (30) days from the date of this Opinion and Order.

Plaintiff is advised that his amended complaint must be a complete pleading that will replace and supersede his original complaint in its entirety. It must be captioned as an "Amended Complaint" and bear the same docket number as this Opinion and Order. In addition, it must set forth the legal basis and factual allegations to support Plaintiff's claims against each Defendant, and the relief he is seeking with respect thereto. The allegations must be short, plain, and concise. In addition, Plaintiff is directed to name as proper defendants those individuals who have some personal involvement in the actions he alleges in the amended complaint. Plaintiff is further directed, in the amended complaint, to indicate each act or omission by each defendant (that is, what each defendant did, or failed to do, to Plaintiff) that Plaintiff alleges violated his rights and the location and approximate date on which such acts or omissions to act took place.

As stated above, to the extent that Plaintiff wishes to file claims against any party whose identity is unknown to him, he must list that party as "John Doe."[8] The Court cautions Plaintiff, however, that the naming of John Doe defendants does not necessarily toll the three-year statute

---

[7]     In his opposition brief, Plaintiff asserts that he has also stated claims for violations of the First, Fourth, and Sixth Amendments. (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss at 1). Even liberally construed, however, Plaintiff's complaint does not allege any facts to support these causes of action.

[8]     If Plaintiff files an amended complaint naming any "John Doe" defendants, the Court will order defense counsel to make its best efforts to identify them so that Plaintiff may file a second amended complaint properly naming them.

of limitations period for Section 1983 claims and that Plaintiff is responsible for ascertaining the true identities of any John Doe defendants and amending his complaint to include their identities before the relevant statutes of limitations expire. *See, e.g.*, *Moody v. Town of Greenburgh*, No. 09 Civ. 6579 (GAY), 2012 WL 1174754, at *2 (S.D.N.Y. Apr. 9, 2012) ("It is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." (quoting *Aslandis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)). *But see, e.g.*, *Berry v. Village of Millbrook*, No. 09 Civ. 4234 (KMK), 2010 WL 3932289, at *4 (S.D.N.Y. Sept. 29, 2010) (explaining that a complaint that is amended to include an additional defendant after the statute of limitations has run is not time barred if it "relates back" to the date of the original pleading under Federal Rule of Civil Procedure 15(c) when "(1) the claims against the new party arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading and, within 120 days after the complaint was filed, the new party (2) received such notice of the action that it will not be prejudiced in defending on the merits, and (3) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." (internal quotation marks omitted)).

Further, Plaintiff is cautioned that, if he fails to file, in a timely fashion, an amended complaint that successfully states a claim upon which relief can be granted, this case will be dismissed with prejudice without further notice.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED and Plaintiff is GRANTED leave to file an amended complaint.

16

If Plaintiff wishes to amend his complaint, he must do so **no later than December 7, 2012**.  No further leave to amend to address the deficiencies identified above and in Defendants' moving papers will be granted.  Failure to file an amended complaint by December 7, 2012, will result in dismissal with prejudice and without further notice.

The Clerk of Court is directed to terminate the motion (Docket No. 16) and to mail a copy of this Order, as well as a copy of the attached form amended complaint for a *pro se* party, to the Plaintiff.

SO ORDERED.

Dated: November 8, 2012
      New York, New York

                          JESSE M. FURMAN
                    United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

AMENDED
**COMPLAINT**

-against-

_____
_____
_____
_____
_____
_____
_____
_____
_____

Jury Trial:   ☐ Yes      ☐ No
(check one)

*(In the space above enter the full name(s) of the defendant(s).  If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names.  The names
listed in the above caption must be identical to those contained in
Part I.  Addresses should not be included here.)*

**I.      Parties in this complaint:**

A.      List your name, address and telephone number.  If you are presently in custody, include your
        identification number and the name and address of your current place of confinement.  Do the same
        for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff        Name _____
                 Street Address _____
                 County, City _____
                 State & Zip Code _____
                 Telephone Number _____

B.      List all defendants.  You should state the full name of the defendant, even if that defendant is a
        government agency, an organization, a corporation, or an individual.  Include the address where
        each defendant may be served.  Make sure that the defendant(s) listed below are identical to those
        contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant  No. 1        Name _____
                        Street Address _____

*Rev. 05/2010*

County, City _____

State & Zip Code _____

Telephone Number _____

Defendant No. 2     Name _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____

Defendant No. 3     Name _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____

Defendant No. 4     Name _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____

## II.     Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.     What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal Questions          ☐ Diversity of Citizenship

B.     If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

_____

_____

C.     If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

_____

## III.     Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.

*Rev. 05/2010*

You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.      Where did the events giving rise to your claim(s) occur? _____

_____ _____

B.      What date and approximate time did the events giving rise to your claim(s) occur? _____

_____

_____

C.      Facts: _____

| **What happened to you?** |
| **Who did what?** |
| **Was anyone else involved?** |
| **Who else saw what happened?** |

## IV.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment,  if  any,  you  required  and  received._____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*Rev. 05/2010*

**V.      Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ___ day of _____, 20___.

Signature of Plaintiff     _____

Mailing Address            _____

                           _____

                           _____

Telephone Number           _____

Fax Number *(if you have one)* _____

<u>Note:</u>   All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.

<u>For Prisoners:</u>

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:    _____

Inmate Number              _____

*Rev. 05/2010*